Sneed, J.,
delivered the opinion of the Court.
The question in this case, is upon the construction of the statutes of descent. The complainants are the aunts, on the paternal side, of Jasper McCracken, who' *356 having inherited an estate in lands from bis father, died intestate, unmarried, without issue, and without brothers, sisters, or the descendants of such, and leaving his mother surviving him. The mother is now dead, and the defendant, Isaac Rains, her second husband, was in possession of the land when this litigation began. The question is, whether, upon the death of Jasper, the inheritance in fee fell upon his surviving parent, or upon the right heirs of the deceased father.
This case is not like that of Beaumont v. Irwin, 2 Sneed, 291, in which it was held that,'by the act of 1842, c. 171, s. 1, upon the death, intestate, of a person owning real estate inherited from the father, without issue or brothers and sisters, or the issue of such, or father or mother surviving, such real estate vests in the right heirs of the father. In .consequence of this construction of the act of 1842, this precise principle has been carried into the Code in more express terms by Hon. R. J. Meigs, who made an able argument in this Court in the case of Beaumont v. Irwin That case simply preserves the estate in the line of the transmitting ancestor when both parents are dead. This case presents the question of the effect of the survivorship of the mother of the intestate, when the estate came from his deceased father.
The parental line of inheritance was first engrafted upon our law by the act of 1784, c. 22. It was a principle in feudal times, that when the- tenant in fee died, the estate should descend, and not ascend. It was an observation of Judge Haywood, that the mission of the two acts of 1784, c. 22, ss. 3 and 7, and c. 10, s. 3, was “to destroy primogeniture; to destroy the indi *357 visibility of estates, and to preserve real estate in the blood of the transmitting ancestor. This is unquestionably true; but another and a favorite object of those laws was to create the parental line of inheritance, and to make the collateral line subordinate to the lineal ascending line. And the law-givers seemed to betray rather an uncommon solicitude to this end; and to set at rest all conjectures as to the intention of the law, they gravely announce it in a preamble to each of said acts. Thus the preamble to the 7th section of the first-named act sets forth that, “whereas, by the law of descents, when one dies intestate owning an estate in lands, leaving no issue, or brother or sister, such estate now descends to some collateral relation, nowithstanding the intestate may have parents living: a doctrine grounded on a maxim of law not founded in reason, and often iniquitous in its consequences.” The preamble to the 3d section of c. 10, recites, that “by the 7th section of the act of 1784, c. 22, real estate actually purchased or otherwise acquired by any intestate, is to descend to the father, if living; but if dead, then to the mother of such intestate and her heirs, by which the descent may be altered by the accident of death; and the paternal line, which is favored in all other instances, may be deprived of the inheritance by such accident.” Under these two statutes of 1784, it was held in North Carolina that the estate which a mother may inherit from the child does not mean such an one as has descended from the father: 2 Hay, 115; 2 N. C. Law Rep., 406; 1 Murphy, 493. And under the same acts, it was held here, that lands acquired by descent from the father do *358 not, upon the death of the child intestate, and without issue, vest in the mother for life: Roberts v. Jackson, 4 Yer., 321. By these statutes, which were nearer the age of entails than to our generation, and which are not altogether free from the infection of old English ideas, the paternal line of inheritance was preferred and favored over the maternal, except when the latter was the line of transmission. But the act of 1842, c. 171, s. 1, made a material innovation upon the laws of descent, so far as to break down the great advantage of the paternal over the maternal line, except when the one or the other happens to be the line of transmission. That act prescribes that the father and mother shall inherit the estate of the child in equal moieties, as tenants in common, and in fee simple if there be no brothers and sisters, and no issue. And if either parent be dead, the estate falls upon the survivor; and if both be dead, upon the right heirs of both, as tenants in common. If the estate came to the intestate by gift from the father, or by gift, devise or descent from the ancestors of the father, then the father shall take, only, if living, in preference to the mother; and if the estate came by gift from the mother, or by gift, devise or descent from the ancestors of the mother, the mother takes, only, if living, in preference to the father: Nic. Sup., 147. These provisions were, in the main, carried into the Code, which provides, that, without reference to the source of intestate’s title, in such case, if there be no brothers or sisters, or other issue, and either parent be living, then the inheritance falls upon such living parent. This, unquestionably, means that one or the other parent *359 surviving the child, takes the estate in any and all events, and without reference to the question of transmission; or, in the words of the statute, without reference to the source of the intestate’s title. But if the estate comes through the one or the other line, the parent representing the line of transmission, “if living,” takes in preference to the other. It will be observed that no express provision is made for the case like this, where the parent representing the line of transmission is dead. We only find that such parent, “if living,” shall take the estate, “in preference to the other.” But the act of 1842, e. 171, under which the rights of these parties attached, is not inconsistent with or repugnant to the Code. Therefore, they may be construed together. The words, “if living, in preference to the other,” are to be found, also, in the act of 1842, c. 171, in regard to the line of transmission; and these words furnished a key, by which the proper interpretation of this question of descent can not be mistaken. These words, that the parent from whom or whose ancestors the land came, shall, if living, inherit the same, in preference to the other parent, must be coupled with the first provision, that without reference to the source of the intestate’s title, if in such case there be no issue, nor brothers or sisters or their issue, and either parent be living, then the estate will go to such parent. Taken and construed together, as the rules of law require that they should be, they may be resolved into the words, that, in such case, if one parent be dead, the other parent may inherit; but if both be living, that one shall be preferred who represents the line through which the estate has been transmitted. If both parents *360 be dead, then the transmitting line is again preferred. "We have no hesitation in bolding, therefore, that the mother of Jasper McCracken, upon his death intestate, inherited his lands in fee simple absolute, and upon her death intestate, that the inheritance has fallen upon her right heirs.
The decree of the Chancellor is affirmed, and the bill dismissed.